## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER, on behalf of himself
and his minor child, J.W.,

     Plaintiffs,

                            Case No. 8:23-cv-01029

v.

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

     Defendant.

_____/

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant The School Board of Hillsborough County, Florida (the "School Board") moves to dismiss Plaintiffs' complaint for failure to state a claim.

## I. INTRODUCTION

This case is Plaintiffs' second action challenging the school assignment of Plaintiff, J.W., which this Court has already recognized provides an independent basis for dismissal of this second filed action. *See* Dkt. 12. Seeking to salvage this second filed action, Plaintiffs have amended the first pleading to narrow the claims therein. Regardless, as explained in this motion, this second filed action fails as a matter of law.

This case involves allegations that Plaintiffs wish for reassignment to a different school. Specifically, and taking the allegations of the complaint as true for these purposes, Plaintiffs allege they are assigned to Adams Middle School, but want Plaintiff J.W. to attend Carrollwood K-8. Dkt. 1 ¶¶ 7–10. Plaintiffs bring two separate counts, one for purported violations of 20 U.S.C. § 1703(c) and the other under Florida Statute § 1002.31.

Plaintiffs' claims are barred by release, discharge, and waiver because Plaintiff previously executed a Settlement Agreement with the School Board. Plaintiff received a specific school assignment for his minor child, in exchange for a broad release, and as a result, Plaintiffs' claims fail.

Plaintiffs' claims also fail because Plaintiffs' own allegations reflect the school boundaries they purport to challenge are predicated on their address, rather than their race.

Separately, Plaintiffs claim under Florida Statute § 1002.31 fails because this statute does not create a private right of action and because Plaintiffs' own exhibits demonstrate Plaintiffs failed to comply with the required condition precedent and/or exhaust administrative remedies.

The School Board requests dismissal of both counts.

## II.   STANDARD FOR DETERMINATION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017). Although the complaint does not need to contain "detailed factual allegations," it must contain enough facts to show the complainant is entitled to relief on more than a "speculative level." *Twombly*, 550 U.S. at 555; *see* Fed. R. Civ. P. 8(a)(2). Applying these principles requires a two-step approach. *Iqbal*, 556 U.S. at 678–79. First, any threadbare legal conclusions are not entitled to any assumptions of truth, but instead should be eliminated from the complaint. *Id.* Second, any well-pleaded factual allegations should be tested for whether they "plausibly" show an entitlement to relief. *Id.* at 679–80. Courts also recognize that where an exhibit attached to a complaint contradicts the allegations of the complaint, the exhibit controls. *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).

## III.   MEMORANDUM OF LAW

### A.   Plaintiffs have not suffered any harm; they have received their desired and bargained-for placement.

As a starting point, and as discussed in the answer to the related lawsuit (Case No. 8:23-cv-00181-SDM-JSS), Plaintiffs previously settled all disputes with the School Board and cannot now attempt to resurrect claims through that date, including allegations of the larger school district supposedly being

70629204;3

segregated. *See* **Exhibit 1** (the "Settlement Agreement"). This Court may consider the Settlement Agreement without converting this motion to dismiss into one for summary judgment because the Settlement Agreement is (1) central to the plaintiff's claim and (2) undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (affirming order granting motion to dismiss, where motion attached contract between the parties) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Because the Settlement Agreement is confidential, the School Board attached a mostly-redacted version as Exhibit 1.[1]

Plaintiffs do <u>not</u> dispute the Settlement Agreement, and in fact, it is the predicate for their allegation of harm. *See* Dkt. 1, ¶ 11 (alleging Plaintiff would be "driving approximately two hours per day to distant schools that J.W. can get admitted into").[2] The Settlement Agreement, which provided Plaintiffs with their previous school choice is clearly central to Plaintiffs' claims seeking a new/different school choice for the same student. *See* Dkt. 1, ¶ 27 (alleging "Plaintiff applied for choice admission …").

---

[1] Prior to this filing, the parties conferred and agreed to the redactions made.

[2] Although not clearly alleged in the Complaint, counsel understands Plaintiffs moved residences within the county after the Settlement Agreement was executed, which is why Plaintiffs allege they would now have to drive multiple hours to the school they can get admitted to under this contract.

4

Pursuant to the Settlement Agreement, Plaintiff received a specific school assignment for his minor child. Additionally, the Settlement Agreement includes a broad release where Plaintiff agreed as follows:

> 5. <u>**Release of the School Board and District**</u>: For and in consideration of the required acts and promises set forth in this Agreement, the **Parent hereby knowingly and voluntarily releases and discharges the School Board and District from any and all claims, demands, causes of action, complaints or charges, known or unknown** specifically related J.W.'s education, services, and educational program in the District **through the date of the execution of this Agreement**.
>
> This shall include, but not be limited to, all claims for services, supports, therapies, evaluations, tutoring, training, compensatory education or services, reimbursements, or claims for expenses, costs, fees, attorneys' fees, **and all losses of any kind whatsoever related specifically to J.W.'s education**, **which the Parent has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the Effective Date of this Agreement**.
>
> The Parent understands that this **release shall also cover any claims, if any, that may belong independently to J.W. related to his educational services and program**. The claims described in this paragraph shall be collectively referred to as "Released Claims" herein. The Parties jointly agree that the release in this paragraph shall not act to impair the enforceability of this Agreement or a waiver of the Parties' respective rights to take action to enforce this Agreement. The Parties further agree that this release shall not cover any claim that is not regarding J.W.'s education or any new claim that may arise by reason of an act or omission occurring after the Effective Date of this Agreement. To that end, the School Board and

70629204;3

> District acknowledge that no provision in this Agreement may be construed as relieving them of any obligation they may have under federal or state law to provide J.W. a FAPE for any time after the execution of this Agreement.

*See* Settlement Agreement, ¶ 5 (emphasis added).

Because Plaintiff voluntary chose to have his child attend the assigned school and because of the release he executed, Plaintiffs' claims fail as a matter of law.

The School Board recognizes that for purposes of this motion, the allegations of the complaint control, and it contests those allegations and will continue to do so if this matter proceeds. But for these purposes, Plaintiffs cannot allege to have suffered harm, as they have in fact received their requested placement and are now simply attempting to use litigation instead of the normal school choice processes, as described below.

## B. The Plaintiffs' complaint explicitly states the assignment was <u>not</u> "on account of . . . race, color, sex, or national origin."

Plaintiffs' first count, under 20 U.S.C. § 1703(c), fails as a matter of law because Plaintiffs admit the School Board's boundary was <u>not</u> predicated on "race, color, sex, or national origin" subject to 20 U.S.C. § 1703(c).

First, Plaintiffs admit the School Board "assigned J.W. to Adams Middle School using his home address." Dkt. 1 ¶ 8 (emphasis added). Second, through the exhibits they attach, Plaintiffs admit the School Board created the

boundaries for the new Carrollwood middle school, using the very same boundaries that existed for the same facility's elementary school. Dkt. 1-5, p. 2 ("Carrollwood PK-8 would use the **same boundary** as the current elementary school when it opens. Middle school students living within the **existing** Carrollwood attendance boundary would be reassigned to attend the newly expanded PK-8 campus.") (emphasis added). Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Turner*, 65 F.4th at 583 n.27 (citing *Hoefling*, 811 F.3d at 1277) ("If an exhibit attached to a complaint contradicts the allegations about the exhibit set forth in the complaint itself, the exhibit controls.").

Section 1703(c) has a limited set of protected classes. Section 1703(c) prohibits discrimination against an individual by assigning him or her "on account of his or her race, color, sex, or national origin . . . ." Plaintiffs' own complaint explicitly states that Defendant assigned the school using Plaintiffs' "home address" and the existing boundaries. Dkt. 1 ¶ 8 and 1-5, p.2. In other words, Plaintiff acknowledges there was <u>no</u> decision based on the protected classes listed in Section 1703. *See id.*

And the case law interpreting Section 1703(c) supports this conclusion. In *U.S. v. Hinds County School Board*, the Fifth Circuit (which later split into

the Eleventh Circuit)[3] noted the definition of "segregation" in 20 U.S.C. § 1720(c) as being the operation of schools "in which students are wholly or substantially separated . . . on the basis of race, color, sex, or national origin . . . ." 560 F.2d 619, 624 (5th Cir. 1977). The court then elaborated: "Thus, among the schools within a system, Congress intended to prohibit the *assignment of students on the basis of race, color, sex, or national origin*." *Id.* The School Board does <u>not</u> do so, and Plaintiffs' allegations are insufficient to state a claim.

Moreover, Plaintiffs' allegations do <u>not</u> allege the boundaries are materially different than those previously approved when the district was declared unified. *See Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cty., Fla.*, 244 F.3d 927 (11th Cir. 2001). And even if the boundaries have been modified, Plaintiffs do <u>not</u> allege there have been material changes to their assignment for their residence, which is the predicate for their claim. *Id.* Plaintiffs' own complaint admits they were not sorted based on race, but rather by "home address" and by the existing boundaries. Dkt. 1 ¶ 8 and 1-5, p.2. Accordingly, dismissal is appropriate.

---

[3]   *See, e.g., Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting pre-1981 decisions of the Fifth Circuit as binding for precedential purposes in the Eleventh Circuit).

**C.    Florida Statute § 1002.31 does not create a private right of action.**

Plaintiffs' second claim, under Fla. Stat. § 1002.31, fails because the statute under which Plaintiffs purport to sue does not create a private right of action, nor do plaintiffs allege it creates a private right of action. *See generally* Fla. Stat. § 1002.31; Dkt. 1. Florida's Supreme Court has noted that where a law "does not specifically provide a private right of action," then "a private right of action is not implied." *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 852 (Fla. 2003); *see also Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 986 (Fla. 1994) ("In general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity will not be construed as establishing a civil liability.").

Contrast Section 1002.31 with other sections in the same Act that do create private rights of action, such as Fla. Stat. § 1002.333(7)(a) (which allows schools or entities to bring actions against public officials or governing authorities), and it is apparent that no private right of action should be implied here. To the contrary, Fla. Stat. § 1008.32 explicitly vests in the State Board of Education the authority to "oversee the performance of . . . district school boards . . . in enforcement of all laws and rules . . . ." As a result, the authority to enforce statutes like Section 1002.31 ultimately rests with the state, and the lack of a private right of action causes Plaintiffs' claim under that law to fail.

9

*See* Fla. Stat. § 1008.32(5) ("Nothing in this section shall be construed to create a private cause of action or create any rights for individuals or entities in addition to those provided elsewhere in law or rule.").

**D.      Even if Florida Statute § 1002.31 had a private right of action, Plaintiffs failed to comply with a mandatory condition precedent and/or the administrative procedures.**

Lastly, Plaintiffs failed to comply with the necessary condition precedent and/or administrative procedures, and thus could not bring a claim under Fla. Stat. § 1002.31 even if it had a private right of action. As explained below, this is evident from Plaintiffs' own exhibits.

Section 1002.31(2)(a) notes school districts should have a "controlled open enrollment process." The School Board has that process, publicly available on the School Board's website for all parents to access.[4] Although Section 1002.31 does not create a private right of action, and thus this discussion is essentially academic, Florida follows a general rule where Plaintiffs must exhaust administrative remedies before they can bring a lawsuit. *See, e.g.*, *Fla. High Sch. Athletic Ass'n v. Melbourne Central Catholic High Sch.*, 867 So. 2d 1281, 1288 (Fla. 5th DCA 2004) ("When an

---

[4]https://community.sdhc.k12.fl.us/wps/portal/community/sdhc.home/choice/application/apply/!ut/p/a1/04_Sj9CPykssy0xPLMnMz0vMAfGjzOKNLSzd3Q0MDL3c_Y3MDBxDvQw9nMwdjQ3MjIAKIoEKDHAARwO8-h3NoPrxKCDKfoQCbx-gLmcjD7fAID9DAwNjQvrD9aPwKgk0JqTACEMBphvACvAEUkFuaGiEQaZnuqOiIgDsEzi8/dl5/d5/L2dBISEvZ0FBIS9nQSEh/pw/Z7_389GG001J0LJ50APR2E2VK3021/act/id=0/p=javax.servlet.include.path_info=QCPcoreQCPNewStudent.jsp/546253552422/=/#Z7_389GG001J0LJ50APR2E2VK3021.

10

administrative remedy is provided by statute, relief must be sought by exhausting this remedy before courts will act.").

"Ordinarily, a plaintiff need only 'generally allege in [his] complaint that all conditions precedent to the institution of the lawsuit have been fulfilled' to adequately plead exhaustion." *Wilson v. Collier Cnty. Florida*, No. 2:21-CV-861-JLB-NPM, 2022 WL 767715, at *2 (M.D. Fla. Mar. 14, 2022) (dismissing pleading that failed to allege exhaustion, which was condition precedent to claim). Here, Plaintiffs' do <u>not</u> allege all conditions precedents have been fulfilled. *See* Dkt. 1, *generally*.

Plaintiffs allege the choice window was closed, but the exhibits to the complaint demonstrate that if Plaintiffs had a legitimate basis to allege a hardship, Plaintiffs could have pursued the normal process rather than pursue litigation. *See* Dkt. 1-5, p. 3 ("Normal school choice hardship rules will apply."); *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)) ("If an exhibit attached to a complaint contradicts the allegations about the exhibit set forth in the complaint itself, the exhibit controls.").

Moreover, Plaintiffs' complaint demonstrates Plaintiffs made no effort to apply through the normal process and that his email was premature. Plaintiffs allege that "during the choice application window," they submitted an application. Dkt. 1 ¶ 27. But the complaint demonstrates this "application"

11

was not in fact a proper application, but rather a threatening e-mail sent <u>before</u> the School Board determined that a middle school would be added to the existing elementary school. *Id.*; Dkt. 1-4 (recognizing the School board still needed "to do one more final vote"). Simply put, Plaintiffs' exhibit demonstrates: (i) Plaintiffs did <u>not</u> submit an application, but merely sent an email; (ii) Plaintiffs' email request was premature because it asked for an assignment to a grade level that did not exist at the time of the request; and (iii) Plaintiffs did <u>not</u> pursue a hardship application. So even if Section 1002.31 permitted private lawsuits—which it does not—Plaintiffs' exhibit demonstrates Plaintiffs failed to comply with the required condition precedents and administrative aspects of pursuing a school choice election. *Id.*

## IV.   CONCLUSION

Notwithstanding the confusion surrounding the multiple lawsuits filed in this matter, the claims in the current action fail and warrant dismissal. Accordingly, the School Board requests the Court grant dismissal of Plaintiffs' claims.

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May 2023, I filed the foregoing using the Court's CM/ECF and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant

13

70629204;3