## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER, on behalf of himself
and his minor child, J.W.,

     Plaintiffs,

                           Case No. 8:23-cv-01029

v.

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY
FLORIDA,

     Defendant.

_____/

### DEFENDANT'S AMENDED[1] MOTION TO DISMISS
### PLAINTIFFS' AMENDED VERIFIED COMPLAINT

Defendant The School Board of Hillsborough County, Florida (the "School Board") moves to dismiss Plaintiffs' Amended Verified Complaint, Doc. 19, for failure to state a claim.

## I.   INTRODUCTION

This is Plaintiffs' second action challenging the school assignment of Plaintiff, J.W., which this Court has already recognized provides an independent basis for dismissal of this second filed action. *See* Doc. 12. Following the School Board's initial motion to dismiss, Plaintiffs filed an

---

[1] The School Board's motion is amended solely to include the certification required under Local Rule 3.01(g).

70841065;5

amended complaint seeking to address the deficiencies in the original version. Regardless, as explained in this motion, this amended complaint fails as a matter of law.

Plaintiffs wish for reassignment to a different school. Specifically, Plaintiffs allege they are assigned to Adams Middle School, but want Plaintiff J.W. to attend Carrollwood K-8. Doc. 19 ¶¶ 8–11. Plaintiffs bring three separate counts: (1) alleging purported violations of 20 U.S.C. § 1703(c); (2) seeking a writ of mandamus for alleged violations of Fla. Stat. § 1002.31; and (3) alleging a violation of 42 U.S.C. § 1983 tied to purported violations of Fla. Stat. § 1002.31.

Plaintiffs' claims are barred by release, discharge, and waiver because Plaintiff previously executed a Settlement Agreement with the School Board. *See* Doc. 19, ¶ 6 (referencing the Settlement Agreement, previously filed in the related action). Plaintiff received a specific school assignment for his minor child, in exchange for a broad release, and as a result, Plaintiffs' claims fail.

Plaintiffs' claims also fail because Plaintiffs' own allegations reflect the school boundaries they purport to challenge are predicated on their address, rather than their race, and those boundaries have not changed with respect to the house where Plaintiffs deliberately moved. *Id.* ¶¶ 7 & 10.

Separately, Plaintiffs claims under 42 U.S.C. § 1983 fail because federal courts do not issue writs of mandamus against state officials, § 1983 only

2

applies to the enforcement of **federal** laws, and in any event there is no protected interest in school choice under any federal law.

The School Board requests dismissal of all three counts.

## II.   STANDARD FOR DETERMINATION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017). Although the complaint does not need to contain "detailed factual allegations," it must contain enough facts to show the complainant is entitled to relief on more than a "speculative level." *Twombly*, 550 U.S. at 555; *see* Fed. R. Civ. P. 8(a)(2).

Applying these principles requires a two-step approach. *Iqbal*, 556 U.S. at 678–79. First, any threadbare legal conclusions are not entitled to any assumptions of truth, but instead should be eliminated from the complaint. *Id.* Second, any well-pleaded factual allegations should be tested for whether they "plausibly" show an entitlement to relief. *Id.* at 679–80. Courts also recognize that where an exhibit attached to a complaint contradicts the allegations of the complaint, the exhibit controls. *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).

## III.   MEMORANDUM OF LAW

### A.   Plaintiffs have not suffered any harm; they have received their desired and bargained-for placement.

As a starting point, and as discussed in the answer to the related lawsuit (Case No. 8:23-cv-00181-SDM-JSS), Plaintiffs previously settled all disputes with the School Board and cannot now attempt to resurrect claims through that date, including allegations of the larger school district supposedly being segregated. *See* **Exhibit 1** (the "Settlement Agreement"). This Court may consider the Settlement Agreement without converting this motion to dismiss into one for summary judgment because the Settlement Agreement is (1) central to the plaintiff's claim and (2) undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (affirming order granting motion to dismiss, where motion attached contract between the parties) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Because the Settlement Agreement is confidential, the School Board attached a mostly-redacted version as Exhibit 1.[2]

Plaintiffs do <u>not</u> dispute the Settlement Agreement, and in fact, it is the predicate for their allegation of harm. *See* Doc. 19 ¶ 6 (acknowledging the settlement agreement), ¶ 6, n.2 ("***Plaintiffs*** do not dispute the authenticity of the redacted settlement agreement the school board has published."), ¶ 13

---

[2] Prior to this filing, the parties conferred and agreed to the redactions made.

(alleging Plaintiff would be "driving approximately two hours per day to distant schools that J.W. can get admitted into").

Plaintiffs moved residences within the county in October 2022, after the Settlement Agreement was executed on March 15, 2022, which is why Plaintiffs allege they would now have to drive multiple hours to the school they can get admitted to under this contract. *See* Doc. 19, ¶ 7. But the Plaintiffs do not allege the School Board made any change in the assignment to their new residence or otherwise engaged in conduct affecting Plaintiffs or their residence after they purchased it and moved into it in October 2022 (nor any change to any assignment specific to Plaintiffs). *See* Doc. 19; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (noting that to establish standing, a plaintiff must demonstrate harm "that is fairly traceable **to the challenged conduct of the defendant**").

The Settlement Agreement, which provided Plaintiffs with their previous school choice is clearly central to Plaintiffs' claims seeking a new/different school choice for the same student. *See* Doc. 19-4, at 2 (showing Plaintiffs' "choice application"); *see also Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)) ("If an exhibit attached to a complaint contradicts the allegations about the exhibit set forth in the complaint itself, the exhibit controls").

5

Pursuant to the Settlement Agreement, Plaintiff received a specific school assignment for his minor child. Additionally, the Settlement Agreement includes a broad release where Plaintiff agreed as follows:

> 5. <u>**Release of the School Board and District**</u>: For and in consideration of the required acts and promises set forth in this Agreement, the **Parent hereby knowingly and voluntarily releases and discharges the School Board and District from any and all claims, demands, causes of action, complaints or charges, known or unknown** specifically related J.W.'s education, services, and educational program in the District **through the date of the execution of this Agreement**.
>
> This shall include, but not be limited to, all claims for services, supports, therapies, evaluations, tutoring, training, compensatory education or services, reimbursements, or claims for expenses, costs, fees, attorneys' fees, **and all losses of any kind whatsoever related specifically to J.W.'s education**, **which the Parent has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the Effective Date of this Agreement**.
>
> The Parent understands that this **release shall also cover any claims, if any, that may belong independently to J.W. related to his educational services and program**. The claims described in this paragraph shall be collectively referred to as "Released Claims" herein. The Parties jointly agree that the release in this paragraph shall not act to impair the enforceability of this Agreement or a waiver of the Parties' respective rights to take action to enforce this Agreement. The Parties further agree that this release shall not cover any claim that is not regarding J.W.'s education or any new claim that may arise by reason of an act or omission occurring after the Effective Date of this Agreement. To that end, the School Board and

District acknowledge that no provision in this Agreement may be construed as relieving them of any obligation they may have under federal or state law to provide J.W. a FAPE for any time after the execution of this Agreement.

*See* Exhibit 1 ¶ 5 (emphasis added).

In short, the timeline is fatal to Plaintiffs' claims. On March 15, 2022, Plaintiffs released all claims (whether known or unknown) through that date (*i.e.*, the date of the Settlement Agreement). The amended complaint alleges the purported harm is that the School Board made an assignment based on the home's address. Doc. 19 ¶ 10. And nothing in the amended complaint suggests the assignment of the home changed <u>after</u> March 15, 2022 (as it was in fact not changed), meaning any purported harm relating to its assignment occurred before that date and was released. Because Plaintiffs voluntary chose to have Plaintiff (J.W.) attend a specific school and because of the release Plaintiffs executed, Plaintiffs' claims fail as a matter of law.

The School Board recognizes that for purposes of this motion, the allegations of the complaint control, and it contests those allegations and will continue to do so if this matter proceeds. But for these purposes, Plaintiffs cannot allege to have suffered harm. Plaintiffs do <u>not</u> even allege the School Board made any change to Plaintiffs' specific assignment after the Settlement Agreement was executed. Plaintiffs have in fact received their requested

placement per the Settlement Agreement and are now simply attempting to use litigation instead of the normal school choice processes, as described below.

**B.  Plaintiffs' amended complaint explicitly states the assignment was <u>not</u> "on account of . . . race, color, or national origin," and boundaries were in place when Plaintiffs deliberately moved to their new home.**

Plaintiffs' first count, under 20 U.S.C. § 1703(c), fails as a matter of law because Plaintiffs admit the School Board's boundary was <u>not</u> predicated on "race, color, sex, or national origin" subject to 20 U.S.C. § 1703(c).

First, Plaintiffs admit the School Board "assigned J.W. to Adams Middle School **using his home address**." Doc. 19 ¶ 10 (emphasis added). Second, through the exhibits they attach, Plaintiffs admit the School Board created the boundaries for the new Carrollwood middle school, using the very same boundaries that existed for the same facility's elementary school. Doc. 19-5, at 2 ("Carrollwood PK-8 would use the **same boundary** as the current elementary school when it opens. Middle school students living within the **existing** Carrollwood attendance boundary would be reassigned to attend the newly expanded PK-8 campus.") (emphasis added). Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Turner*, 65 F.4th at 583 n.27 (citing *Hoefling*, 811 F.3d at 1277) ("If an exhibit attached to a complaint contradicts the allegations about the exhibit set forth in the complaint itself, the exhibit controls."). Third,

Plaintiffs do <u>not</u> allege the School Board changed any assignment to Plaintiffs' home after they moved into it in October 2022. *See* Doc. 19, ¶¶ 7 & 10 (alleging Plaintiffs relocated into a new home in October 2022 and the address was used for the school assignment).

Section 1703(c) has a limited set of protected classes. Section 1703(c) prohibits discrimination against an individual by assigning him or her "on account of his or her race, color, sex, or national origin . . . ." Plaintiffs' own complaint explicitly states that Defendant assigned the school using Plaintiffs' "home address" and the existing boundaries. Doc. 19 ¶ 10; Doc. 19-5, at 2. In other words, Plaintiff acknowledges there was <u>no</u> decision based on the protected classes listed in Section 1703. *See* Doc. 19 ¶ 10; Doc. 19-5, at 2.

And the case law interpreting Section 1703(c) supports this conclusion. In *U.S. v. Hinds County School Board*, the Fifth Circuit (which later split into the Eleventh Circuit)[3] noted the definition of "segregation" in 20 U.S.C. § 1720(c) as being the operation of schools "in which students are wholly or substantially separated . . . on the basis of race, color, sex, or national origin . . . ." 560 F.2d 619, 624 (5th Cir. 1977). The court then elaborated: "Thus, among the schools within a system, Congress intended to prohibit the

---

[3] *See, e.g.*, *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting pre-1981 decisions of the Fifth Circuit as binding for precedential purposes in the Eleventh Circuit).

70841065;5

*assignment of students on the basis of race, color, sex, or national origin.*" *Id.* The School Board does <u>not</u> do so, and Plaintiffs' allegations are insufficient to state a claim.

Notably, Plaintiffs' allegations do <u>not</u> allege the boundaries are materially different than those previously approved when the district was declared unified. *See Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cty., Fla.*, 244 F.3d 927 (11th Cir. 2001). But more critically, even if the boundaries have been modified, Plaintiffs do <u>not</u> allege there have been material changes to the assignment for their residence, which is the predicate for their claim. To the contrary, Plaintiffs explicitly state they recently moved into their current home and do **<u>not</u>** allege any change to the boundaries for their house after they purchased it. *See* Doc. 19 ¶ 7. Plaintiffs' own complaint admits they would <u>not</u> be sorted based on race (assuming they went with their default school assignment, rather than the bargained-for placement in the Settlement Agreement), but rather by "home address" and by the existing boundaries. Doc. 19 ¶ 10; Doc. 19-5, at 2. Accordingly, dismissal is appropriate.

In other words, in October 2022 Plaintiffs purchased a home assigned to Adams Middle School. *See* Doc. 19 ¶¶ 7 and 10. The School Board very recently voted to expand another school, Carrollwood Elementary, to add a middle school. *See* Doc. 8, ¶ 8. But the School Board's change to Carrollwood did <u>not</u> affect or change Plaintiffs assignment, which assignment was based on their

10

70841065;5

residence. *See* Doc. 19 ¶ 10; Doc. 19-5, at 2. Plaintiffs' residence (and therefore Plaintiff J.W.) were assigned to Adams Middle School both before and after the challenged conduct. And thus, for this additional reason, dismissal is appropriate here.

### C.   Federal courts do not issue "writs of mandamus" against state actors (or even "writs of mandamus" generally).

Plaintiffs' second claim is styled as "writ of mandamus" for purported violations of Florida's school choice laws. *See* Doc. 19 ¶ 33. But Federal Rule of Civil Procedure 81(b) explicitly abolishes writs of mandamus in federal court. There is a general act relating to writs under which Plaintiffs might be attempting to frame their claim, as it discusses writs "in the nature of mandamus." *See* 28 U.S.C. § 1361. That Act states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee **of the United States** or any agency thereof to perform a duty owed to the plaintiff." *Id.* (emphasis added).

That Act, by its own terms, states that courts may only compel officers or employees of the United States or its agencies; it does not authorize writs against state actors. The Fifth Circuit, before its split into the new Fifth and Eleventh Circuits, confirmed that federal courts do not issue writs like writs of mandamus against state actors. *Moye v. Clerk, DeKalb Cty. Superior Court,*

474 F.2d 1275, 1276 (5th Cir. 1973);[4] *accord Butt v. Zimmerman*, No. 21-14187, 2022 WL 5237916, at *2 (11th Cir. Oct. 6, 2022) ("However, federal courts lack jurisdiction to issue writs of mandamus to direct state officials in performing their state duties."). And every court since has reached the same conclusion. *Ochoa v. Collier*, 802 F. App'x 101, 105 (5th Cir. 2020) (citing *Moye*, 474 F.2d at 1276) ("[F]ederal courts do not have jurisdiction to issue the writ against a state actor or state agencies."); *see also Pennhurst State Sch. & Hops. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. To the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

Another instructive case involving purports writs of mandamus against state actors is *Robinson v. California Board of Prison Terms*, 997 F. Supp. 1303 (C.D. Cal. 1998). Although *Robinson* was a district court case out of California, it helpfully collected cases from the Second, Fourth, Fifth (from this Circuit, pre-split), Sixth, and Ninth Circuits noting the inapplicability of federal writs of mandamus against state actors:

> [F]ederal courts are **without power** to issue writs of mandamus **to direct state agencies** in the

---

[4] *Bonner*, 661 F.2d at 1209 (adopting pre-1981 decisions of the Fifth Circuit as binding for precedential purposes in the Eleventh Circuit).

> performance of their duties. *Clark v. State of Washington*, 366 F.2d 678, 681–82 (9th Cir.1966); *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir.1988); *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n. 5 (10th Cir.1986); *Moye v. Clerk, Dekalb County Superior Court*, 474 F.2d 1275, 1275–76 (5th Cir.1973) (per curiam); *Haggard v. State of Tennessee*, 421 F.2d 1384, 1386 (6th Cir.1970); *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587 (4th Cir.1969) (per curiam).

*Id.* at 1308 (emphasis added). In sum: Federal courts do <u>not</u> issue writs against state actors.

As noted above, Plaintiffs' complaint is explicitly based on a purported violation of Florida's state school choice law, specifically as Plaintiffs allege is in Florida Statutes §§ 1014.04, 1002.20, and 1002.31. Doc. 19 ¶¶ 32–33. Although Plaintiffs also purport to couch the claim in terms of the alleged "fundamental right of parents to direct the care, upbringing, and education of their children under the Fourteenth Amendment," its thrust is an effort to apply Plaintiffs' claimed meanings of those Florida Statutes themselves. (A fuller discussion of the Fourteenth Amendment aspect of Plaintiffs' second and third claims is below in Section III.E of this motion.) Accordingly, Plaintiffs cannot use a writ of mandamus to require a federal court to tell a state actor how to do its job under state law, and dismissal is appropriate.

**D.     Plaintiffs cannot use Section 1983 to enforce Florida Statutes.**

Plaintiffs' third claim is a 42 U.S.C. § 1983 action based on the same theories as the "writ of mandamus" action. As noted above, Section III.E of this motion addresses the Fourteenth Amendment aspect of this claim in more detail. But with respect to the theories under Florida State law, § 1983 does not provide a valid claim.

Section 1983 applies to violations of "the Constitution and laws," and that language refers to the Constitution and laws of the *United States*.[5] *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) (emphasis added) ("Section 1983 does <u>not</u> create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a *federal right*.") (emphasis added). As the Northern District of Florida explained in *Dean v. Escambia County*, "[i]t is well settled that § 1983 imposes liability only for violations of rights protected by the Constitution and laws of the United States. . . . Therefore, mere allegations of state law infractions are insufficient to support a § 1983 claim." No. 3:05-cv-00029, 2005 WL 927387, at *8 (N.D. Fla. Apr. 20, 2005) (citing numerous cases from around the country for the

---

[5] Section 1983 further confirms this interpretation by noting in its final sentence that "any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." In other words, Section 1983 is not concerned with local laws.

proposition, including *Knight* from the Eleventh Circuit). As a result, Plaintiffs cannot use Section 1983 to enforce Florida's state laws.

**E.    Florida's school choice laws do not create a right enforceable through the Federal Constitution.**

Lastly, both the second and third counts of the amended complaint contain general references to the Fourteenth Amendment and purported right of parents to choose their own schools. It is true that the Supreme Court has noted the general rights of parents to raise their children. But the Supreme Court has also been cautious to warn against stretching that right too far:

> In *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, the Court held that the liberty protected by the Due Process Clause of the Fourteenth Amendment includes the right "to … **bring up children**," … and, concomitantly, the **right to send one's children to a private school** that offers specialized training in that case, instruction in the German language. In *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, the Court applied "the doctrine of *Meyer v. Nebraska*," *Id.*, at 534, 45 S.Ct., at 573, to hold unconstitutional an Oregon law requiring the parent, guardian, or other person having custody of a child between 8 and 16 years of age to send that child to public school on pain of criminal liability. … In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15, the Court stressed the limited scope of Pierce, pointing out that it lent **"no support to the contention that parents may replace state educational requirements with their own idiosyncratic views of what knowledge a child needs to be a productive and happy member of society"** but rather **"held simply that while a State may posit (educational) standards, it may not pre-empt the**

> **educational process by requiring children to attend public schools."** *Id.*, at 239, 92 S.Ct., at 1545 (White, J., concurring). And in *Norwood v. Harrison*, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723, **the Court once again stressed the "limited scope of Pierce,"** Id., at 461, 93 S.Ct., at 2809, **which simply "affirmed the right of private schools to exist and to operate . . . ."** Id., at 462, 93 S.Ct., at 2809.

*Runyon v. McCrary*, 427 U.S. 160, 176–77 (1976) (emphasis added).

In other words, the constitutional cases regarding children's educations deal with the right to send children to *private* school rather than *public* school. And *Runyon* itself simply held that federal anti-discrimination laws do not violate the constitution's freedom of association or any amorphous right to control education just because they do not allow segregated schools. *Id.*

The circuit courts have reached the same conclusion. For example, in *Stevenson v. Blytheville School District #5*, the Eighth Circuit offered a lengthy opinion noting that "neither [of the Supreme Court's decisions in] *Meyer*, *Pierce*, nor any other relevant precedent support the proposition that a parent's ability to choose where his or her child is educated *within the public school system* is a fundamental right or liberty." 800 F.3d 955, 967 (8th Cir. 2015) (emphasis in original, internal quotes omitted).

Likewise, the *Stevenson* court rejected the proposition that a general state school choice law created a property interest enforceable through the constitution: "Therefore, under [the Supreme Court's] *Goss* [decision], the

16

property interest which is protected by the Due Process Clause is the right to participate in the entire educational process and not the right to participate in each individual component of that process." *Id.* at 968 (quoting *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997); *see also Anderson v. Hillsborough Cty. Sch. Bd.*, 390 F. App'x 902, 903 (11th Cir. 2010) ("Florida law does not, however, create a right to attend a high school of your choice, and this court has never decided that a Florida student has a property or liberty interest in attending a particular high school."). It further noted that laws only create property interests where they create "a legitimate claim to entitlement as opposed to a mere subjective expectancy." *Stevenson*, 800 F.3d at 968 (quoting *Snaza v. City of Saint Paul*, 548 F.3d 1178, 1182–83 (8th Cir. 1997).

Additionally, it is worth noting that states may still take away property interests even beyond those that are "mere subjective expectancies"; they just must offer *procedural* protections such as hearings before doing so. *See, e.g.*, *Norman v. Duval Cty. Sch. Bd.*, 361 F. Supp. 1167, 1174 (M.D. Fla. 1973) (describing the administrative hearings that must occur where there is a legitimate property interest at stake). The *Norman* court further noted the hesitance of federal courts to interpret state laws on these issues where there is not a binding state decision controlling the matter. *Id.* In this case, there are

17

no Florida state cases explicitly holding that parents have more than a mere expectancy under the various statutes Plaintiffs cite.

Turning then to those statutes, Plaintiffs cite to three Florida Statutes: Sections 1014.04, 1002.20, and 1002.31. Section 1014.04 outlines general parental rights (including rights unrelated to education), and does <u>not</u> state anything about school choice. Rather, it merely notes parents have rights to do activities such as enroll their children in public schools, make health care decisions for their children, and the right to receive notification of any criminal offenses for which their children might be suspects. Fla. Stat. § 1014.04(1).

Likewise, Section 1002.20 does not create any legitimate right as opposed to a mere expectancy. Its language about school choice is in Subsection (6), which states: "Parents of public school students **may** seek any public educational school choice options that are applicable and available to students throughout the state." Fla. Stat. § 1002.20(6) (emphasis added). In other words, parents *may* seek school choice, but there is nothing under that statute obligating schools to accept those children.

Finally, Section 1002.31 is the most on-point statute for purposes of school choice. But even its language notes there is no guaranteed right to school choice. For example, Subsection (1) notes that "parents' indicated preferential educational choice" is merely "a significant factor." And even the language in paragraph (2)(a) that Plaintiffs cite about schools accepting applications is still

18

subject to the school's capacity, including its long-term plans and projections. Fla. Stat. § 1002.31(2)(b). Similarly, the statute notes that merely applying for school choice is not a guaranteed result, given that schools must also give preferential treatment to classes of children such as children of military personnel. Fla. Stat. § 1002.31(2)(c). In other words, there is still a process to which the School Board must adhere, and Plaintiffs cannot use Section 1983 to claim some unhindered right to force their way into a specific school.

Lastly, Plaintiffs' own complaint states that there is a capacity issue with Carrollwood in the long term, which does not change the fact that Florida law creates a mere expectancy at most, but which is still worth noting. Specifically, Plaintiffs allege: "The anticipated enrollment for the expanded Carrollwood K-8 is 861 **with a capacity of 812**." *See* Doc. 19, ¶ 18.

In other words, Plaintiffs' complaint is an effort to supersede Florida's school assignment and choice laws (and the school choice laws of all states for that matter) and replace them with a federal super-standard that parents can force specific schools to accept their children. A result like that would be unworkable and run contrary to the Supreme Court's repeated warnings about the "limited scope" of its cases involving educational rights, which is why cases that have examined the issue do not require it. Accordingly, the School Board requests dismissal of these efforts.

19

## IV.   CONCLUSION

Notwithstanding the multiple lawsuits filed by Plaintiffs, the claims in the amended complaint in this case fail and warrant dismissal. Therefore, the School Board requests the Court grant dismissal of Plaintiffs' claims.

### **Local Rule 3.01(g) Certification**

The undersigned counsel for the School Board certifies that they have conferred with Plaintiff by phone and email on the relief requested in this motion and the legal deficiencies in Plaintiffs' claims in this case and the related, first-filed action. After the original motion was filed, Plaintiff alleged the conferral was not complete and the parties conferred further by email and then by phone on June 16, 2023. The parties continued to confer by email, including on June 19, 2023. To date, the parties were not able to reach an agreement on the relief sought in this motion.

70841065;5

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
AKERMAN LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June 2023, I filed the foregoing using the Court's CM/ECF and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*

Counsel for Defendant

21

70841065;5