# United States District Court
## For The Middle District of Florida
## Tampa Division

Blake Warner, on behalf of himself and his minor child J.W.

v.

The School Board of Hillsborough County, Florida

Case Number 8:23-CV-1029

# Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff' Amended Verified Complaint

(i)

## TABLE OF CONTENTS

| I | Table of Authorities | iv |
|---|---|---|
| II | Lack of 3.01(g) Certification | 1 |
| III | Due Process Standards | 2 |
| 1. | Substantive | 3 |
| 2. | Procedural | 3 |
| 3. | Rights | 3 |
| | A.  Federal | 3 |
| | B.  State | 4 |
| IV | Claims | 4 |
| 1. | no claim-splitting | 4 |
| 2. | release of liability through settlement agreement does not apply | 4 |
| 3. | assigning students by address does violate 20 U.S.C. § 1703(c) | 6 |
| 4. | plaintiff does not need to allege that his assigned school was changed | 6 |
| 5. | federal mandamus | 7 |
| 6. | there is a protected interest in school choice under federal law | 7 |
| V | Misrepresentations and Distinguishments | 7 |
| 1. | Section 1014.04 | 7 |

2.  *Stevenson v. Blytheville Sch. Dist. #5, 800 F.3d 955*, 969 (8th Cir. 2015) . . . 8

3.  *Anderson v. Hillsborough Cty. Sch. Bd., 390 F. App'x 902*, 903 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4.  *Mazevski v. Horseheads Central School Dist.*, 950 F. Supp. 69 (W.D.N.Y. 1997). 10

5.  *United States Knight v. Jacobson, 300 F.3d 1272*, 1276 (11th Cir. 2002) . . . . 10

6.  *Dean v. Escambia County Commissioners*, 3:05-cv-00029-LC (N.D. Fla. April 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# I   Table of Authorities

Cases                                                                                                                                   Page

*Anderson v. Hillsborough Cty. Sch. Bd.*, 390 F. App'x 902, 903 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . iii, 9, 10

*Anthony v. City of Naples, & 7-Eleven, Inc.*, Case No: 2:16-cv-543-FtM-99MRM, at *10 (M.D. Fla. Dec. 1, 2016) . . . . . . . . . . . . . . . . 3

*Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) . . . . . . . . . . . . . . . . 2

*DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956, 960 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dean v. Escambia County Commissioners*, 3:05-cv-00029-LC (N.D. Fla. April 20, 2005) . . . . . . . . . . . . . . . . iii, 11

*Howard v. Children's Network of Sw. Fla., LLC*, 2:23-cv-62-SPC-KCD, at *2 n.2 (M.D. Fla. May 30, 2023) . . . . . . . . . . . . . . . . . . . . . 2

*Mazevski v. Horseheads Central School Dist.*, 950 F. Supp. 69 (W.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . iii, 10

*Silk Way W. Airlines, LLC v. Intrepid Aerospace, Inc.*, 2:23-cv-82-JES-NPM, at *5 (M.D. Fla. June 2, 2023) . . . . . . . . . . . . . . . . . . . . . . . 2

*Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 969 (8th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, 8, 9

*Troxel v. Granville*, 530 U.S. 57, 65 (2000) . . . . . . . . . . . . . . . . . . . . 3

*United States Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, 10

Constitutional Provisions, Statutes and Rules

Other Authorities

*Defendant* moved to dismiss this action citing:

1. release of liability through settlement agreement;

2. assigning students by address does not violate 20 U.S.C. § 1703(c);

3. plaintiff did not allege that his assigned school was changed;

4. because federal courts do not issue writs of mandamus against state officials; and

5. there is no protected interest in school choice under any federal law.

*Plaintiff* does not dispute that federal mandamus is inappropriate for state actors, the claim was only brought out of an abundance of caution to prevent claim-splitting allegations when it is filed in state court.

However *Plaintiff* contents that the rest of the claims are properly plead and state a claim for relief.

## II  LACK OF 3.01(G) CERTIFICATION

Defendant's Motion to Dismiss Plaintiff' Amended Verified Complaint, Doc 21, lacks a certification that the movement conferred with the opposing party. Ostensibly because the *Defendant* did not in fact confer with the *Plaintiff* prior to filing the motion. Local Rule 3.01(g) is strictly enforced, thus the Motion to Dismiss is due to be denied on that ground alone:

> This court has denied 12(b) motions based entirely on lack of 3.01(g) compliance:
>
>> "'Before filing a motion in a civil action, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, or to certify a class, the movant must confer with the opposing party in a good faith effort to resolve the motion.' M.D. Fla. R. 3.01(g). The motion will be denied for failure to confer with opposing counsel before filing the motion and for failure to include a certification of conference in the motion." *Silk Way W.*

1

*Airlines, LLC v. Intrepid Aerospace, Inc., 2:23-cv-82-JES-NPM*, at *5 (M.D. Fla. June 2, 2023)

"Howard raises for the first time in his response that he does not believe Defendants engaged in a good faith conferral under M.D. Fla. R. 3.01(g) before filing their Motion to Dismiss. The Court agrees that the mere email exchange referenced in Howard's response does not comply with the spirit of the Rule and reminds Defendants that more communication is needed to meet the good-faith requirement for a compliant conferral. In the future, if a party believes the other has violated this Rule, they are instructed to notify the Court as soon as practicable." *Howard v. Children's Network of Sw. Fla., LLC, 2:23-cv-62-SPC-KCD*, at *2 n.2 (M.D. Fla. May 30, 2023)

"Moreover, even if it were proper to include this request in the Response, the request is otherwise due to be denied for failure to comply with Local Rules 3.01(a) and 3.01(g), United States District Court, Middle District of Florida (Local Rule(s))." *Imiracle (HK) Ltd. v. Okie Smoky LLC, 3:22-cv-1389-MMH-MCR*, at *2 (M.D. Fla. May 16, 2023)

"The motions filed by attorneys ... will be denied without prejudice for failure to confer with opposing counsel before filing the motion and for failure to include a certification of conference in the motion." *A.D. v. Whydham Hotels & Resorts, Inc., 2:22-cv-643-JES-NPM* (M.D. Fla. Nov. 22, 2022)

## III   Due Process Standards

"The Due Process Clause offers two different kinds of constitutional protection: procedural due process and substantive due process, and a violation of either may form the basis for a suit under § 1983. McKinney v. Pate, 20 F.3d 1550, 1555-56 (11th Cir. 1994) ( en banc)." *Slakman v. Buckner*, 434 F. App'x 872, 875 (11th Cir. 2011)

"'[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression.' County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998) (internal quotations and citations omitted)." *Davis v. Carter, 555 F.3d 979*, 981 (11th Cir. 2009)

1. **SUBSTANTIVE**

"The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them."' Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986))." Davis v. Carter, 555 F.3d 979, 981-82 (11th Cir. 2009)

2. **PROCEDURAL**

"'A § 1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process.' Zisser v. Fla. Bar, 747 F.Supp.2d 1303, 1317 (M.D. Fla. 2010) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994))." *Anthony v. City of Naples, & 7-Eleven, Inc., Case No: 2:16-cv-543-FtM-99MRM*, at *10 (M.D. Fla. Dec. 1, 2016)

3. **RIGHTS**

The *Amended Complaint* alleges the existence of both a federal and state-created educational rights:

A. **FEDERAL**

"The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390, 399, 401 (1923), we held that the 'liberty' protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own.' Two years later, in Pierce v. Society of Sisters, 268 U.S. 510, 534-535 (1925), we again held that the 'liberty of parents and guardians' includes the right 'to direct the upbringing and education of children under their control."' *Troxel v. Granville, 530 U.S. 57*, 65 (2000)

3

### B. STATE

"Rights created by state law (e.g., tort and employment law) are protected by procedural … due process" *DeKalb Stone, Inc. v. County of DeKalb, 106 F.3d 956*, 960 (11th Cir. 1997) (quoting McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994)

"We recently reiterated this logic in the context of state education rights. C.B. ex rel. Breeding v. Driscoll, 82 F.3d 383 (11th Cir. 1996). In accordance with school board policy and procedures, several students were suspended after telephone conferences with parents. Id. at 385-87. The Court held that because the decision to suspend a student is an executive act, any deprivation of the state-created right to attend school is protected only by the guarantee of procedural due process. Id." *Id*

## IV  CLAIMS

### 1. NO CLAIM-SPLITTING

*Defendant* mentioned in passing "which this Court has already recognized provides an independent basis for dismissal of this second filed action. See Doc. 12.", but fails to present any argument or facts.  Notwithstanding that it is frivolous because Doc 12 is moot because it references not one, but two superseded complaints and *Defendant* fails to present any argument about why the two operative complaints constitute claim-splitting.

### 2. RELEASE OF LIABILITY THROUGH SETTLEMENT AGREEMENT DOES NOT APPLY

*Defendant* makes the follow arguments:

1. "Plaintiffs moved residences within the county in October 2022, after the Settlement Agreement was executed on March 15, 2022, which is why Plaintiffs allege they would now have to drive multiple hours to the school they can get admitted

4

    to under this contract."

2. "Plaintiffs do not allege the School Board made any change in the assignment to their new residence or otherwise engaged in conduct affecting Plaintiffs or their residence after they purchased it and moved into it in October 2022 (nor any change to any assignment specific to Plaintiffs)."

3. "And nothing in the amended complaint suggests the assignment of the home changed after March 15, 2022 (as it was in fact not changed), meaning any purported harm relating to its assignment occurred before that date and was released"

4. "Plaintiffs cannot allege to have suffered harm. Plaintiffs do not even allege the School Board made any change to Plaintiffs' specific assignment after the Settlement Agreement was executed. Plaintiffs have in fact received their requested placement per the Settlement Agreement and are now simply attempting to use litigation instead of the normal school choice processes"

    *Defendant* raises these nonsensical arguments that nothing has changed between the settlement release date of March 2022 and present therefore it is released. This argument fails because as the Amended Complaint points out, *Plaintiff* never resided in *North Tampa* during any time periods covered by the release, so it is impossible for the release to cover claims related to *Plaintiff*'s assignment to *North Tampa* schools. Additionally, the challenged Carrollwood K-8 school boundary was created on May 9, 2023—more than a year after the settlement agreement. *see* Amended Complaint ¶ 7.

    *Defendant* erroneously states that "Plaintiffs cannot allege to have suffered harm", yet *Plaintiff* did just that in Amended Complaint ¶ 13 which *Defendant* cited earlier.

    *Defendant*'s assertion that *Plaintiff* is "simply attempting to use litigation instead of the normal school choice processes" is both immaterial to the causes of

5

action and is undercut by the existence of Counts II and III of the Amended Complaint.

### 3. ASSIGNING STUDENTS BY ADDRESS DOES VIOLATE 20 U.S.C. § 1703(C)

Not withstanding that *Defendent* is publicly advocating for the return of *de-facto segregation* with their novel argument that "Plaintiffs' own complaint admits they would not be sorted based on race ... but rather by 'home address' and by the existing boundaries."[1], § 1703(c) is a de-facto segregation cause of action and *Plaintiff* was simply pleading the assignment element of it. Put simply, *Plaintiff* does not need to allege or prove de-jure segregation or intent to sustain a § 1703(c) claim, only that he was assigned to a further away school that resulted in a greater degree of segregation which the complaint alleges[2].

### 4. PLAINTIFF DOES NOT NEED TO ALLEGE THAT HIS ASSIGNED SCHOOL WAS CHANGED

*Defendant* asserts (without citation) that "Plaintiffs do not allege there have been material changes to the assignment for their residence, which is the predicate for their claim". The EEOA does not state that a student must be *re-assigned* to a further away school, only *the assignment of a student to a school other than the one closest to his or her place of residence*. The claim is that once Carrollwood K-8 was created, *Plaintiff* was no longer assigned to the closest school. Accepting *Defendant*'s completely unsupported position would lead to the absurd result of school boards being allowed to open new schools and then only assign students in

---

[1] unsurprisingly without citation.
[2] *see* Amended Complaint ¶ 22 - 30

predominantly white neighborhoods to them[3].

## 5. FEDERAL MANDAMUS

*Plaintiff* does not dispute that federal mandamus is inappropriate.

## 6. THERE IS A PROTECTED INTEREST IN SCHOOL CHOICE UNDER FEDERAL LAW

To be clear, the procedural and substantive due process claim in the *Amended Complaint* alleges[4] that *Defendant* denied *Plaintiff* the right to *apply* for school choice by making the application process unavailable. The mere act of applying for a school fits squarely within the federally protected "right to direct the ... education of children". *see supra* III 3. A..

Additionally, the state-created rights cited in the Amended Complaint[5] are protectable by procedural due process. *see supra* III 3. B..

# V  Misrepresentations and Distinguishments

## 1. SECTION 1014.04

*Defendant* misrepresented Fla. Stat. 1014.04(1)(c) by stating "Section 1014.04 outlines general parental rights (including rights unrelated to education), and does not state anything about school choice." yet the statute states that parents have "The right, pursuant to s. 1002.20(2)(b) and (6), to apply to enroll his or her minor child in a public school", yet the referenced Fla. Stat. 1002.20(6) is explicitly

---

[3]Which is funny enough, what they are doing with Carrollwood K-8.
[4]*see* Amended Complaint ¶ 33
[5]*see* Amended Complaint ¶ 33

7

about school choice. *Plaintiff* explicitly referenced it in the *Amended Complaint* ¶ 16(b), 33, and 45. Yet *Defendant* intentionally misrepresented the statute to this Court when it omitted references to 1002.20 in it's summary then stated that the statute did "not state anything about school choice" when it clearly does by reference.

*Defendant* then states that "parents may seek school choice, but there is nothing under [Fla. Stat. § 1002.20(6)] obligating schools to accept those children." but this contention misses the point of the procedural due process claim: that *Defendant* made the application process unavailable to *Plaintiff*, and that he has the *right* to *apply*. To whatever extent that the school is at capacity is purely academic at this point because *Defendant* has not actually denied *Plaintiff* citing overcapacity. Even if the school is over capacity, *Plaintiff* still has the right to apply and to be put on a waiting list. *see* Fla. Stat. 1002.31(3)(j).

Again, academic until *Defendant* actually accepts an application from *Plaintiff* and then denies him citing over-capacity, however *Defendant* argues that the *Amended Complaint* concedes that the school has a capacity issue citing ¶ 18. However *Defendant* omits ¶ 19 - 21 which a) clarify that the numbers cited are for the 2025-2026 school year and that there is capacity available for the 2023-2024 and 2024-2025 school years. Furthermore, the attached Exhibit E (which is more recent and what the school board actually approved) states that the proposed utilization rate for 2025-2026 school year is 99% indicating that there is capacity available.

## 2. *Stevenson v. Blytheville*, 969

*Defendant* misrepresented the holding in *Id* by stating "the Stevenson court rejected the proposition that a general state school choice law created a property

8

interest enforceable through the constitution". What *Id* really held was that an *Arkansas* state school choice law that gave school boards discretion to exempt themselves from the school choice law did not convey a protect-able property interest to the parents, which is correct: it is not a right if the government has discretion to deny it to you.

The *Florida* law at issue is a *non-discretionary* open enrollment statute and the "Parental Bill of rights", both of which create enforceable rights.

"In summary, although the 2013 Act prohibited nonresident school districts from considering certain characteristics of an applicant, it still invested the nonresident school district with the discretion to decide whether to accept a student seeking transfer. Cf. Horton v. City of Smithville, 117 Fed.Appx. 345, 347–48 (5th Cir.2004) ('[D]iscretionary statutes do not give rise to constitutionally-protected property interests.' (footnote omitted))" *Id*

"'In reviewing whether the appellants have a protected property interest, we must examine what the 2013 Act provides to the appellants. And, by its plain language, what it provides to them is the possibility of transfer to another district, not a guarantee or absolute right to transfer.'" *Id*

### 3. *Anderson v. Hillsborough*, 903

*Defendant* misrepresented to this Court that "this court has never decided that a Florida student has a property or liberty interest in attending a particular high school." by quoting a 2010 Eleventh Circuit opinion which was written eleven years before the "Parental Bill of Rights" was enacted, and six years before Fla. Stat. 1002.31 was amended to switch Florida from a discretionary open-enrollment school choice state to a non-discretionary open-enrollment school choice state[6].

In any event, the opinion explicitly stated that it was not deciding the issue that *Defendant* cited it for:

---

[6] *see* https://www.tampabay.com/news/politics/stateroundup/gov-rick-scott-signs-school-choice-education-bill-19-others-into-law/2273265/

9

"But this is not a case where we need decide this question ... assume arguendo, therefore, that the due process clause of the Fourteenth Amendment applies to both Anderson's temporary suspension and the Boards's decision to place her in an alternative school" *id*

### 4. *Mazevski v. Horseheads*, 950 F. Supp. 69

This *New York* case is not about enforcing state-created rights or school choice through the due process clause at all, rather *Id* held that there is no *federal* right to participate in a high school marching band without any underlying state-law right.

### 5. *United States Knight v. Jacobson*, 1276

*Defendant* asserts that "Section 1983 applies to violations of 'the Constitution and laws,' and that language refers to the Constitution and laws of the United States Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002) (emphasis added) ('Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right.').

The cited portion of *Knight* was a narrow Fourth Amendmentment false arrest case which held that federal law, not state law, governs the validity of arrests under the Fourth Amendment. The instant claim is Fourteenth Amendment Procedural Due Process claim, not a Fourth Amendment False Arrest claim. The elements and relevant case law between the two types of claims are wholly distinct: Fourth Amendment case law is completely inapplicable to Procedural Due Process claims.

## 6. *Dean v. Escambia County Commissioners*, 3:05-cv-00029-LC

*Defendant* additionally cites a *Northern* District Court opinion, *Id*, in which a *pro se* plaintiff collaterally challenged an unfavorable state court judgment regarding the height of his residential fence, by suing–inter alia–the special master acting in a judicial capacity who presided over the case and the neighbor who reported the city code violation at issue, in federal court. Unsurprisingly, the magistrate judge recommended dismissal under the Rooker-Feldman Doctrine. However only one of the cases cited in the quoted excerpt deal with *procedural due process* with regards to state-created rights (and it was denied on standing grounds):

1. Baker v. McCollan held state tort of negligence is not actionable through § 1983.
2. Knight v. Jacobson was about Fourth Mmendment false arrest.
3. J.H. ex rel. Higgin v. Johnson was a substantive due process claim based on the theory that the state failed to prevent the sexual assault of a child in their custody.
4. White v. Olig was another Fourth Amendment false arrest case.
5. Barry v. Fowler another Fourth Amendment false arrest case.
6. Street v. Surdyka another Fourth Amendment false arrest case.
7. Ouzts v. Maryland National Insurance Co appears to be another Fourth Amendment false arrest case.
8. Moore v. The Marketplace Restaurant, Inc false arrest/false imprisonment case.
9. Moore v. Kusper due process case, but court held plaintiff lacked standing due to lack of harm.
10. Clark v. Link was another Fourth Amendment false arrest case.

11

Not withstanding Knight v. Jacobson, none of these cases are binding on this court. And none of them were on-point. It appears to be a magistrate judge being a bit sloppy in throwing a bat-shit-crazy *pro se* plaintiff out of court.

## VI  Conclusion

For all of the foregoing reasons, *Plaintiff* requests that the Court deny Defendant's Motion to Dismiss Plaintiff' Amended Verified Complaint without leave to amend.

6-19-2023

Date

Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM

12